Based on this morning's docket, here is the case of Richard Kirkpatrick v. Terry Learned, and respondent J.T. Laurent Brewer, intervener, appellant. And we have Mr. Michael Goldberg for the appellant, and Mr. Hank, I'm sorry, Balandi for the accolade. You may proceed. May it please the court. We're here today asking that you reverse and remand the trial court's decision in this grandparent participation case. My name is Mike Goldberg, and I represent the grandparent in this case. And in 2005, the current Grandparent Participation Act was enacted. Prior to that, there was a statute that had been in effect for about 20 years, and that statute used the best interest standard. The scales were evenly tipped in favor of the grandparent and the parent. And there was even a presumption in the previous statute that there should be visitation for a grandparent. In the Wickham v. Byrne case, which was an Illinois Supreme Court case in 2002, they wiped out the old Grandparent Participation Act, calling it facially unconstitutional, based on two issues. And the Wickham court took its direction from the U.S. Supreme Court case of Troxel in 2000. The Wickham court said, look, you have to have a presumption in favor of the parent. The scales have to actually be tipped in favor of the parent. And the only way for the grandparent to overcome that presumption is to show that there would be some sort of harm, either physical, emotional, or mental, to the child because of this refusal of visitation. So instead of there being just simply a best interest standard, which ultimately came down to if you were related to the child and there was some breakdown in the family, you were going to get visitation, under this new statute, it is admittedly more complicated. And there is little direction since 2002 about what this new Grandparent Visitation Act means. The case went up to the Illinois Supreme Court three times. In two of those cases, the court decided the issue on completely separate issues, one on mootness and one on saying that the trial court decided the constitutionality too soon in the case. But in this Flynn v. Henkel case, which we both cite, the court gives us some insight into what this new standard of harm means. We can't assume, can't we, that it was the intent of the legislature to comply with Troxell and Whitcomb? Absolutely. In other words, they're trying to rewrite the statute to comply with what the U.S. Supreme Court has said the constitution requires. Absolutely. Right. And that is reflected in the words of the statute. Because Troxell tells us there has to be a presumption. It's a fundamental right to care, custody, and control of your child. It's a sacred right and there's a whole body of cases going back well over 100 years in the U.S. Supreme Court about how important that right is. But at the same time, Troxell and Whitcomb acknowledge the fact that the ASEAN-area prototypical family, if it ever existed back in the 40s and the 50s, is no longer the case. You can't really talk about a typical family. And so that every state in the country has some sort of Grand Parent Visitation Act. Some of them still use the best interest standard, but most, especially after Troxell, incorporate some sort of heightened standard to protect the fundamental right, but at the same time acknowledge that there will be non-parents in many children's lives who take on a caretaker role. And it should be noted in some states that you don't even have to be biologically related. They have these concepts of quasi-parent and de facto parent, which we don't necessarily have here in Illinois, certainly not in a statutory sense. But so the Flynn v. Hankel case, which is a 2007 case, I believe, yes, 2007 Illinois Supreme Court case, what Flynn v. Hankel tells us is what harm is not. That's the best direction that we have in Illinois as to what this new standard means. So Flynn v. Hankel says that it is not the fact that you're never going to get to know your grandparent, and it's not the fact that you won't be able to develop a relationship. Both the trial court and the appellate court in Flynn v. Hankel allowed the grandparent visitation based on these theories. The Illinois Supreme Court, while acknowledging that grandparent visitation exists and can exist, they certainly had the opportunity to get rid of it entirely like they had in Wickham, but they didn't. But they said that is not the type of harm that we are talking about. So that's the direction that the trial court and that this court is left with in terms of what to do with the grandparent visitation case. Now, our contention in this case, why the judge was against the manifest weight of the evidence, is that we did show the type of harm that was glaringly absent in Flynn v. Hankel. And I think it's instructive to look at the court's ruling or decision on page 145 of the transcript. And it says, while the court certainly is not devoid of its own opinion with regards to these matters, Ms. Wilson, who is the attorney for the grandmother, I am obligated to follow the current law of the land and whether or not, quite frankly, this court agrees with the language of the statute when it was changed. I think that counsel will know years prior, prior to 2007, there was more of a flavor with respect to taking into consideration the common law of the various cases that have come down. Specifically, I'm referring to not only Falls' graft, but, and then it goes on to mention Troxel, Bouley, and Wickham. Well, one of the problems with the judge's oral ruling is that the act took effect in 2005. In 2007, the act was amended for issues that didn't come up in this case. There's about three or four different factors that were tweaked and changed in 2007. But I think the court has incorrectly stated that there was a common law prior to 2007. Do you think that there's a difference in the analysis when you have a factual situation where there's a preexisting relationship between the child and the grandparents and one where there's not a preexisting? Absolutely. And you think that that can be factored into the 607 statutes there? Correct. Okay. And that's, if you look at the statute and there is language, toward the back, toward the end of the statute, the factors that the court is to consider. And it talks about the length and quality of the prior relationship between the child and the grandparent. It talks about whether the child resided with the petitioner for at least six consecutive months, with or without the current custodian present, and whether the petitioner had frequent or regular contact or visitation with the child for at least 12 consecutive months. And then the next J. J. Any other fact that establishes that the loss of the relationship between the petitioner and the child is likely to harm the child's mental, physical, or emotional health? And also K talks about the primary caretaker. So it's our contention that when you apply those factors, that you would come up with the opposite conclusion that was reached in this case. I assume that the father was asked why he didn't want to participate or let the grandparent participate in the visitation during the hearing? No, it was a directed finding, Judge. So there was no explanation given by the father why he's objecting to it? Correct, other than my client's testimony as to why during the hearing. But there was a directed finding in the case. I mean, well, Section F, the good faith of the person denying visitation. Is there anything in the record to establish the good or bad faith? Well, I would argue, first of all, as far as my client, the court's. Quite frankly, I'm 146. The problem this court is confronted with here, and then it takes a pause. The court goes on a tangent. Quite frankly, I found the testimony in regards to Miss Brewer is candid. I think there's no question in my mind that you love these children. I think you do love these children. So the court made that much of a finding as to my client that I would argue is an indication that he felt that she was making her petition in good faith. There was evidence. What about the father? Was there any testimony? As to the father, there was only evidence or testimony about my client. And the testimony had to do with what I would consider a personality difference or a friction between. But he was not called as an adverse witness or anything during the case in chief to say, hey, why are you objecting to this? No. So the record doesn't reflect his motives, good faith or bad faith. Other than my client's testimony, no, he did not testify. But what there is in the record, if you look at the chronology, either going. Did he argue? Pardon me. Did he argue? What about the GAL? Did your client request a GAL be appointed? My client requested a GAL. And why did that not happen? Well, the father objected. And what were the grounds that he gave for objecting to the GAL being appointed? I think that I wasn't the appellate counsel. And that didn't even happen during the trial. It was months before. But in essence it was that's putting the cart before the horse because there has to be standing and there has to be at least a showing of a presumption. The presumption was overcome. But I don't know exactly why. I do know that there's a record that my client wanted a GAL and that the father. Was your client willing to pay for the services in the GAL? Absolutely. So you're telling the court right now that it wasn't a matter of finances, the reason that the father objected to the GAL. It had to be something other than him paying for it. And that's in the record either by offer of proof or some kind of petition. I'd give you an offer of proof that my client would pay for the GAL. No, no, I'm talking about the GAL, the whole situation with the court disallowing the GAL. I don't know. I don't know if there was any record about the money. I don't. But about there being a petition for a GAL about the denial and was there any offer of proof regarding that? Do you know? I don't know. I don't know. I know that it was asked for. I know that it was objected to, and I know that the GAL was not appointed. One last question. How much visitation did your client request? Is that in there? I know that my client had weekend visitation, overnight visitation, and she was requesting overnight weekend visitation. If you look at the chronology of this case, there was never a time in the children's lives when my client wasn't caretaking or visiting with these children on a regular basis. I think that if you look at Flynn v. Henkel, which was a very minimal amount of visitation, the child was very young. By the time the case got to court, the child hadn't lived that long, and we were talking about twice a month for a couple hours a month, which I think by many people's definition of a grandparent's involvement with a child is rather short. This is well beyond that, and I would submit that the types of families that this statute was created for, this is it. You have a mother and father who are together for a while but separate in 2004. They were never married. Clearly, the mom has drug issues and problems, and at various times there was testimony from my client, which was not easy to testify about having drug issues, and there was an overdose, which actually there was a conviction of murder for. So there was a back and forth between the mom and the father where they didn't get along, and there was sort of a rift in the family. And as is often the case, whether there's drug issues or whether one parent moves far away or whether there's a death, the other grandparent or a grandparent or sometimes another family member steps in and fills that emotional void or emotional need. This is not a case, as in Flynn v. Henkel, where it's like the child's never going to get to know this side of the family or this bloodline is never going to be recognized, which is noble, and I think a lot of people find important, but I think the courts have explicitly said that's not enough. This is a case where the grandmother is before you today and was before the trial court saying, I have almost a quasi-parental role in these children's lives. We have that type of relationship. And she laid it out year by year by year where it would be overnight, where it would be at her house, where even to the point where the mom had to have supervised visitation and she would be the supervisor. I have one last question. What's the living proximity between the father and the grandparents? Where do they reside? I think it's within an hour, but I'm not sure. Thank you. We will have the opportunity to partner with Mr. Goldberg. Please, the court, counsel. I'm Hank Golani, and I'm here on behalf of the respondent, the father of the minor children, Rick Kirkpatrick. This case, like the two cases I've heard before this one today, involves a standard of review that is against manifest way to the evidence. Is it when he made his finding as a directed finding? When he does it at the close of the petitioner's evidence, isn't it viewing all the evidence of the like most favorable to the non-moving party? And I think you can do that here and still. I think it's manifest way to the evidence because there was no finding. But regardless, even if you take that approach. It's kind of hard to weigh manifest way, but only one side got to put their evidence on. I understand that. What it comes down to is whether or not the burden was met under the statute, whether or not there was any evidence to move forward to require additional testimony in this case. And I think the facts are important enough in this case. I would like to review just a few things to make sure that we're all on the same page on those. And then answer some questions that I'm sure you still have. First of all, the Wickham court essentially held that a court may not interfere with the parent's fundamental right to the care, custody, and control of his child unless the child's health, safety, or welfare will be adversely affected by a refusal of visitation. Very similar to that, then, when the current grandparent visitation statute was enacted in 2005. That simply states or provides in making a determination there is a rebuttable presumption that a fit parent's actions and decisions regarding grandparent, great grandparent, or sibling visitation are not harmful to the child's mental, physical, or emotional health. Okay. But then what does the grandparent have to do, what quantum of proof, to rebut the presumption? Well, it clearly states that the presumption to go away so that then the court weighs all the evidence. The statute goes on to say that the grandparent then has the burden of proof to show. How can they do that if they are denied any contact at all? I'm not saying that happened in this case, but let's just say in a case where they are denied any contact at all with the child because they have no legal right to it or anything. How can they possibly show that then? Well, in this particular case. They haven't seen the child for months. Yes, and in this particular case, I think there are a number of ways in which that can be done. Counsel and I, neither one, were unfortunately involved in the trial of this case. There are many things that we have questions about that we don't have answers for either. One of the things that you can do is certainly you could have asked for a GAL. Asked for a GAL. And that was objected to by your client, and why? I have absolutely no idea. I've asked my client the same thing. And what's he tell you? I don't want you to breach any. He was advised. I don't think he had a whole lot of say in that part of it is my understanding. He doesn't know. I've asked a number of questions, but some of the questions that were asked at trial. If anything, can we presume by the fact that he objects to the appointment of GAL when there's no financial burden going to be placed on him? Can we assume anything? I would say no. We can't assume he's trying to hide something? No, I think that's. We can't assume that he's trying to prevent the other side from establishing some evidence of harm? No. No, I don't think that's the case. And there were many other opportunities that the petitioner in this case had. Did he, in fact, not allow any contact with the child and the grandmother? Did he deny any visitation? After the mother's death in April of 2008, yes, he did. Well, to follow up on Judge Stewart's question, then how could somebody prove any harm if they don't have any access to the child, any records of the child, any doctor's reports or anything else? Well, in this case, you can certainly seek that information through the discovery process, and that was not sought in this case. That's first and foremost. Second, there was never any subpoenas for any records, any school records. What type of records would you say needed to be discovered, needed to be produced? I think school records first and foremost, daycare records, even to see how the children are adjusting. Are they having repeated incidents at school? Are they showing signs of acting out? I mean, those are all things that would indicate that something's not quite going on right within the child's mind. If they're fighting, if they're being disrespectful, if their grades are suffering, numerous types of things along those lines, and certainly the caregivers of the children, the teachers of the children, that information could have been requested and they could have been subpoenaed, they could have provided depositions. That was not even sought in this particular case. That is an avenue that is available for the petitioner, and it was never pursued. And I can't answer that question, why that didn't happen. But what I can say is the facts of the case, I believe, under the manifest weight of the evidence, or even if you strike that and just look at whether or not there was ever any kind of overcoming, meeting the burden of proof that there is some sort of emotional or physical or mental harm to these children, there's nothing that even comes close to that. And even if you take all of the testimony of the grandmother into account, I think that this case, the Flynn case, does bear some resemblance to it. And if you bear with me for a moment about the facts, I'll explain why. Counsel stated the kind of harm contemplated by the Illinois Grandparent Visitation Statute is harm that would result from the denial of grandparent visitation where the grandparent and grandchild share a close and substantial relationship, distinguishing that from the Flynn case. And if we assume that is true, then the trial court certainly should have considered the relationship between the grandchild and the grandmother. And in this particular instance, if you look at all of the facts that were presented, it's as follows. The father's children were born September of 2002 and November of 2003. By the time the second child was born, there had been a complete deterioration of the relationship between the father and the petitioner in this particular case. Now, the petitioner testified that she visited the children four hours at a time, two to three times per week when they were infants. After that, mother moved away, picked up and left with the kids in October of 2004 and petitioners did not see them again until early 2005. So there was a period of a few months there where there was no contact of any kind. Mother then moves in with petitioner's ex-husband in March of 2005 and stays for one year. During that time, the mother had visitation with the kids one weekend a month and some Wednesdays. And during that period of time, petitioner testified that she only saw the kids when the mother would bring them over to her house and weren't living with her during that period of time. And again, we're only talking about the mother having the children a few days a month. And somewhere in there, she got to spend some time with them. Subsequently, the petitioner moved in with or the petitioner's daughter moved in with her from March of 2006 to February of 2007. And during that time, mother had visitation with the kids three or four Wednesdays per month and one weekend per month. Petitioner, the children lived with her during that period of time when the visitation was exercised. But if you look at the amount of time, even over that 11-month period, that does not meet under the statute, as I think was alleged initially in the original brief, that these children were living with her for a period of at least six months, which is one of the factors to look at in the grandparent visitation statute. That never happened. The children were living with their father throughout this period of time. And a few days per month, they were actually staying with the grandmother and their biological mother in grandmother's home. That was it. Let's look at the factors here, the mental and physical health of the child. Are you aware of any problems with the children? No. Okay. The mental and physical health of the grandparent, the petitioner. Are you aware of any problems on that? I am not. That would preclude visitation. The length and quality of the prior relationship, you just outlined that. I mean, it was intensive for the first few years or so, then it kind of tapered off then. Okay. You don't question the good faith of the party of the grandmother filing the petition? I do not. There's nothing to show whether or not there was good or bad faith of your client in denying visitation. Can you tell me why he denied visitation? My understanding is that the two of them from early on, shortly after the birth of the first child, just had a very bad relationship and do not. So it had nothing to do with the grandmother's ability and care for the grandchildren. It was strictly personal between the father and the grandmother. I believe that is correct. And you think that's – does that go to the good faith of the person? Is that a legitimate reason to deny visitation because you personally have a problem with the grandparent? Is that a legitimate reason? Well, I don't know. But what I will say is – How would that affect – I don't know that that's something to be properly considered under the current grandparent visitation statute and the Flynn case. I think that indicates that that is not something that would go toward a – I know it's – Would that show bad faith? I don't believe that that would show bad faith. You're saying that's more neutral. I do. I am. So you think that's a legitimate reason to deny visitation because the father and the mother-in-law – the mother's mother, I guess. They were never married, right? No, they were not. Okay. But we hear all these stories all the time. I can't get along with my mother-in-law or whatever. But that's a legitimate reason? I believe it is. Okay. One of the other things that I would point out, the mother then ended up getting an apartment on her own, moving away from the petitioner's home in February of 2007 until her death in April of 2008. What is very significant is that the petitioner testified that she didn't see – she saw the kids very little during that time and then not at all after the summer of 2007. There's quite a bit of time between the summer of 2007 and the mother's death in April of 2008. The kids were ages 3 and 4 the last time the petitioner spent any time with them whatsoever. They're now ages 7 and 8. And they've spent more time without the petitioner in their lives than they have with her in their lives. It's significant also to point out the petitioner had numerous opportunities. She said that she was able to communicate with my client's parents. She had their address. She did know how to get a hold of them. She could have used them to find out where they were living, where the children were going to school or daycare throughout that period of time.  And yet no attempt to do this was ever made. I think that's very significant. No cards ever sent. No attempts to contact. No – there's nothing that would have precluded her from going to attend any of their school functions, a spring sing or play or Christmas program. All of those things were available for her to do, and yet she never sought the opportunity to take advantage of those things. In analyzing grandparents' rights, do you think, like opposing counsel, that there's a difference if there had been a prior relationship between the grandparent and the child and if there had not been a prior relationship? I think so. And what the facts come down to in this case, why they're so important, is because I don't know that there was a substantial enough of a relationship formed for that distinction to be made between, say, this case and the Flynn case. Yes, there was a relationship. There's no denying that there was a relationship. I'm not going to argue that the grandmother does not love these grandchildren, but what it comes down to under the statute is whether or not there was a substantial enough relationship for there to be some sort of mental, physical, or emotional harm to those children as a result of that visitation being discontinued. It's been discontinued for several years at this point. There's no showing of any kind. There's no evidence of any kind offered or presented to the court where this burden of proof existed. It seems like a GAL's report would be awful helpful to everybody involved, doesn't it? I'm not going to disagree with that. I mean, I hate to keep on getting back to that, but I've got a problem with your client objecting to even a GAL being appointed. I wish I knew why that was done. I wish I knew why the court denied that. I think you and I both sitting in the place of this judge would have required that. I don't know why. I can't answer that question. I wish I could. Well, thank you for your answer. But what it comes down to is if you look at the amount of time grandmothers spend, it's no more than, say, a teacher or other daycare provider or other caregiver throughout that same period of time. And counsel mentioned earlier that there are other states that have what's known as quasi-parent statutes that provide for visitation by people that are not even related to the child. And Illinois courts distinctly and purposefully steered away from that when it enacted the grandparent rights statute. And I think that expanding something to that extent based on a relationship, although it was a limited relationship, based on that limited relationship and expansion of rights and showing that, yes, there would be harm as a result of that limited relationship for three years or three-and-a-half years, I think is a stretch. And that is getting the quasi-parent visitation statute. And once you get to that point, don't parents or, excuse me, teachers and daycare providers spend more time than what was spent here in this case. Thank you. Thank you, Mr. Golombani. You have the opportunity. Mr. Goldberg. Thank you. First of all, I would say, point out that the petition, the mom died in April of 08, and the petition was filed in August of 2008. So my client, after trying to get visitation filed relatively quickly, there was a lot of legal back and forth that led up to the trial. You're asking that this court here remand it back for a full hearing? Yes. Is that the bottom line? Yes. And, Judge, I was not at the trial, and that could be a hindrance, but I'm looking at the record, and the counsel who argued and who represented my client at trial did establish some things in the record that I want to bring up. First of all, she says, yes, it is very difficult to establish the actual harm that they believe is necessary, and if you're not allowed to have a guardian ad litem to see the child, if everything that is offered throughout the last two, three years is rebutted, if my client is told to stay away or the police are going to come get you, you're going to be arrested. So I would say submit her argument in response to your question, you know, or to counsel's argument that she could have gone to soccer games or other activities. I mean, once the mother died, there was a complete split. I believe it does go to the bad faith of the father to deny visitation or deny this ongoing relationship and cut it off simply because of the fact that you have an adult dispute with the grandparent. I think that's actually the crux and the essence of why we have a statute like this. Once again, in the words of the trial counsel, to me the statute is wrong. If you're allowed to keep the children away from a person and in doing so say because you're not having access to them, you can't prove your point. Are you asking us to find the statute as well? No, Judge, Your Honor. What I'm asking is to reverse and remand this back to the trial court for a new hearing. The statute is, as the Justice points out, in keeping with Troxel and Wickham, we have little choice but to have this heightened standard. But I believe that if you apply the standard and apply the law, and I think quite honestly what some trial courts are feeling is a lack of direction and maybe they don't know. But I think this court was mistaken about the state of the law and about when the statute took effect, what cases were pertinent. The Falsgraf case which was cited, which came to this court here, this appellate court, had nothing to do with the facts of this case, and it's not pertinent at all. If you look at, you're inferring from the dad's actions, the bad faith, to take the relationship and go to nothing, I think does demonstrate bad faith. And I think there's an unreasonable denial, and there was a motion filed, I see in the record, there was a motion filed on November 18, 2008, demand to quash appointment of guardian ad litem. So the case was filed in August of 08. They requested a GAL, and by November of 2008, I believe it's a tactical decision. So was the guardian ad litem appointed? I mean, it sounded like you said the pleading was demand to quash appointment of guardian ad litem. When was that filed again, the motion to quash it? In November of 2008. So what I would guess from my practice in family law is that almost as a matter of course, they look at the list, they appoint a GAL, they look at the list, they say this person is appointed, tell this person, put it in the order, and then everyone goes out and communicates with the GAL. So there probably was an appointment, but then it was quashed. When you say probably for tactical considerations, he objected, does that mean you think that he probably didn't have anything to gain by an appointment of a GAL? Right. But there's no requirement. No, but what you're going to get is you're going to get an investigation into the case, interview with people, interview with the children. I understand that, but are we to fault the father because he did not agree to it when there is no requirement for one? No, no. I guess you can't fault him. It's a trial tactic. It's something that's available to him to object to. I think your time has expired, and we will read the record closely. Thank you. Thank you for your briefs and your arguments, gentlemen.